1   COLLEEN BAL, State Bar No. 167637
    cbal@wsgr.com
2   RIANA S. PFEFFERKORN, State Bar No. 266817
    rpfefferkorn@wsgr.com
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   One Market Plaza, Spear Tower, Suite 3300
5   San Francisco, California  94105-1126
    Telephone:     (415) 947-2000
6   Facsimile:     (415) 947-2099

7

8   Attorneys for Plaintiff
    PLOOM, INC.
9

10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                       SAN FRANCISCO DIVISION

14  PLOOM, INC., a Delaware corporation,        )   CASE NO.:  13-cv-05813-SC
                                                 )
15              Plaintiff,                        )   **PLAINTIFF'S NOTICE OF**
                                                 )   **MOTION AND MOTION FOR**
16       v.                                       )   **DEFAULT JUDGMENT AGAINST**
                                                 )   **DEFENDANTS IPLOOM, LLC AND**
17                                                )   **ANTHONY MARINO**
    IPLOOM, LLC, a Massachusetts limited liability )
18  company; and ANTHONY MARINO, an              )
    individual,                                   )
19                                                )
                                                 )
20              Defendants.                        )
    _____    )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 2

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................... 3

III. ARGUMENT .................................................................................................................. 7

    A. Legal Standard for Default Judgment ................................................................. 7

    B. Default Against the Defendants Was Properly Entered ..................................... 8

    C. Jurisdiction and Venue Are Proper .................................................................... 8

        1. Subject Matter Jurisdiction .................................................................... 8

        2. Personal Jurisdiction .............................................................................. 9

            a. The Court Has General Jurisdiction over Defendants .................. 9

            b. The Court Has Specific Jurisdiction over Defendants ............... 10

                i. Purposeful Availment ................................................... 10

                ii. Plaintiff's Claims Arise from Defendants' Activities ....... 11

                iii. Personal Jurisdiction in This District Is Reasonable ........ 11

        3. Venue .................................................................................................... 12

    D. Plaintiff Is Entitled to Injunctive Relief, Transfer of the Infringing Domain Name, and Statutory Damages ........................................................................ 12

        1. Plaintiff Is Entitled to a Permanent Injunction .................................... 13

            a. Federal and Common-Law Trademark and Trade Dress Infringement ............................................................................... 13

            b. Violation of Lanham Act § 43(a); Common-Law Unfair Competition ................................................................................ 13

            c. Unlawful Business Practices and False Advertising (CAL. BUS. & PROF. CODE §§ 17200 & 17500) ................................... 13

        2. Plaintiff Is Entitled to Transfer of the Infringing Domain Name Under the Anticybersquatting Consumer Protection Act (ACPA) ........... 14

        3. Plaintiff is Entitled to Statutory Damages ........................................... 14

            a. Statutory Damages for Willful Use of Counterfeit Marks to Market and Sell iPloom Pax and Counterfeit Pax ...................... 14

            b. Statutory Damages for Infringing Domain Name ...................... 15

        4.      Plaintiff is Entitled to Attorney's Fees .......................................................16

        5.      Plaintiff is Entitled to Its Costs ................................................................16

IV.     CONCLUSION ..............................................................................................................17

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Allstate Ins. Co. v. Tankovitch*, 776 F. Supp. 1394 (N.D. Cal. 1991) ............................... 7

4

*Aztar Corp. v. MGM Casino,*
    No. NO. 00-833-A, 2001 WL 939070 (E.D. Va. Apr. 9, 2001)....................................... 16

5

6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......................... 9

7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................................. 9, 11

8

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ................................. 10

9

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) .......................... 15

10

*eAdGear, Inc. v. Liu,*
    No. CV-11-05398 JCS, 2012 WL 2367805 (N.D. Cal. June 21, 2012).......................... 16

11

12

*eAdGear, Inc. v. Liu,*
    No. CV-11-05398 RMW (JCS), 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012) ............. 16

13

*Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210 (9th Cir. 2003)................................. 16

14

*Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996).................................................... 9

15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).................................... 9

16

*Int'l Bancorp, L.L.C. v. Societe des Baines de Mer et du Cercle des Etrangers a Monaco,*
    192 F. Supp. 2d 467 (E.D. Va. 2002)................................................................ 16

17

*K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079 (9th Cir. 2007) ............................................ 16

18

*Louis Vuitton Malletier S.A. v. LY USA Inc.*, 676 F.3d 83 (2d Cir. 2012) ................................... 16

19

*Menken v. Emm,* 503 F.3d 1050 (9th Cir. 2007) ....................................................... 12

20

*Nissan Motor Co. Ltd. v. Nissan Computer Corp.*, 89 F.Supp.2d 1154 (C.D. Cal. 2000)............ 12

21

*Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431 (C.D. Cal. 2012) ............. 16

22

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991) ................................................ 10

23

*Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343 (D. Or. 1991) ............................... 11

24

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) ...................................... 12

25

*Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999) ...................................... 10, 11

26

*T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir. 1987) ..................................... 11, 12

27

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987)...................................... 3, 7

28

1    *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................. 11

2    **STATUTES**

3    15 U.S.C. § 1114 ............................................................................................................. 5, 12

4    15 U.S.C. § 1114(1)(a) .......................................................................................................... 15

5    15 U.S.C. § 1116 ................................................................................................................... 13

6    15 U.S.C. § 1116(d) ............................................................................................................. 15

7    15 U.S.C. § 1116(d)(1)(B)(i) ................................................................................................ 14

8    15 U.S.C. § 1117(a) .............................................................................................................. 16

9    15 U.S.C. § 1117(c) ........................................................................................................ 15, 16

10   15 U.S.C. § 1117(c)(2) ......................................................................................................... 15

11   15 U.S.C. § 1117(d) ............................................................................................................. 15

12   15 U.S.C. § 1125(a) ............................................................................................... 5, 12, 13, 16

13   15 U.S.C. § 1125(d) .................................................................................................. 5, 12, 14

14   15 U.S.C. § 1125(d)(1) ......................................................................................................... 16

15   15 U.S.C. § 1125(d)(1)(C) .................................................................................................... 14

16   28 U.S.C. § 1331 ..................................................................................................................... 8

17   28 U.S.C. § 1338 ..................................................................................................................... 8

18   28 U.S.C. § 1338(b) ............................................................................................................... 8

19   28 U.S.C. § 1367 ..................................................................................................................... 8

20   28 U.S.C. § 1391(b)(2) ......................................................................................................... 12

21   CAL. BUS. & PROF. CODE § 17200 ................................................................. 5, 12, 13, 14

22   CAL. BUS. & PROF. CODE § 17500 ................................................................. 5, 12, 13, 14

23   CAL. BUS. & PROF. CODE § 17535 ................................................................................. 14

24   CAL. CODE CIV. PROC. § 410.10 ........................................................................................ 9

25 

26   **RULES**

27   Fed. R. Civ. P. 55 .................................................................................................................... 7

     Fed. R. Civ. P. 55(a) ........................................................................................................... 7, 8

28   Fed. R. Civ. P. 55(b) ............................................................................................................... 7

1

Fed. R. Civ. P. 55(b)(2) ........................................................................................ 1

2

N.D. Cal. Civil L.R. 54 ........................................................................................ 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that on Friday, May 2, 2014, at 10:00 a.m. in Courtroom 1,

3   17th floor, United States District Courthouse, 450 Golden Gate Avenue, San Francisco,

4   California 94102, before the Honorable Samuel Conti, Plaintiff Ploom, Inc. ("Plaintiff" or

5   "Ploom") will and hereby does move, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a

6   default judgment against defendants iPloom, LLC ("iPloom") and Anthony Marino ("Marino")

7   (collectively "Defendants").

8   Plaintiff seeks a default judgment against Defendants pursuant to Federal Rule of Civil

9   Procedure 55(b)(2) due to Defendants' failure to respond to Plaintiff's Complaint (Docket

10  ["Dkt."] 1); Defendants' failure to appear or participate in this case; and the Clerk's February 6,

11  2014 entry of default against both Defendants (Dkt. 18).  Plaintiff is entitled to a default

12  judgment, permanent injunction, and award of statutory damages and attorney's fees and costs

13  against Defendants under Rule 55(b)(2) in the manner and form submitted herewith in Plaintiff's

14  [Proposed] Default Judgment and Order ("Proposed Order").

15  This motion is based upon this Notice of Motion; the Memorandum of Points and

16  Authorities in support thereof; the declaration of Riana S. Pfefferkorn ("Pfefferkorn Decl.") and

17  attached exhibits filed concurrently herewith; the pleadings, records, and papers on file in this

18  action; oral argument of counsel; and any other matters properly before the Court.

19

## STATEMENT OF ISSUES

20  1.      Is Plaintiff entitled to an order entering a default judgment, permanent injunction,

21  an award of statutory damages and attorney's fees, and transfer of an infringing domain name

22  against Defendants iPloom, LLC and Anthony Marino?

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3       This case is about willful trademark and trade dress infringement, cybersquatting, and

4   unfair competition.  Plaintiff Ploom, a San Francisco-based maker of electric vaporizers,[1] has

5   built up a reputation and goodwill in its products through years of product development and

6   promotion, and has federal and common-law rights in its trademarks and trade dress.  Defendant

7   Marino and his company (Defendant iPloom) have willfully misappropriated and used Plaintiff's

8   marks and trade dress, and confusingly similar marks and trade dress, in connection with the

9   marketing and sale of inferior counterfeit versions of Plaintiff's products, and continue to do so.

10  Defendants market and sell these counterfeit goods through a website (the "Infringing Website")

11  with a domain name <www.iploom.com> (the "Infringing Domain Name") that is confusingly

12  similar to Plaintiff's PLOOM mark.

13      Plaintiff brought this lawsuit in order to curtail the harm it has suffered and continues to

14  suffer through Defendants' deliberate and ongoing efforts to capitalize unlawfully on its success.

15  Defendants have not answered or otherwise responded to the Complaint and have never appeared

16  in this action, and thus have been placed in default.  Plaintiff now seeks a default judgment

17  against Defendants on the claims alleged in the Complaint.  By this motion, Plaintiff seeks to

18  recover relief sought in the Complaint, specifically:

19      • statutory damages for Defendants' use of multiple infringing and counterfeit
20        marks applied to multiple counterfeit goods;

21      • statutory damages for Defendant's cybersquatting;

22      • transfer of Defendants' infringing domain name to Plaintiff;

23      • a permanent injunction against Defendants to terminate their unlawful conduct;
24        and

25      • costs and attorney's fees for Defendants' willful infringement and cybersquatting.

26

27

28      [1] Electric vaporizers, such as those Ploom develops and sells, are an emerging category of devices that can heat tobacco, nicotine (as in the case of e-cigarettes), or other compounds to a
(continued...)

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are set forth in Plaintiff's Complaint and established as true by the Clerk's entry of default.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Plaintiff Ploom and its Trademarks/Trade Dress.   Plaintiff Ploom is located in San Francisco.  Dkt. 1 at ¶ 8.  It develops and sells electric vaporizers, including its most popular product, the PAX electric vaporizer ("PAX Vaporizer"), as well as a variety of replacement parts, accessories, and tobacco branded with Plaintiff's PLOOM trademark.  *Id.* at ¶¶ 13-15. Plaintiff sells its products throughout the United States and abroad, exclusively through authorized resellers and through its website at <www.ploom.com> (the "Ploom Website"), which receives over 5,000 unique visitors a day.  *Id.* at ¶¶ 14, 27.

Plaintiff has common-law rights in the trademarks PLOOM, PLOOM (stylized), PAX, PAX (stylized), and the X Design, and in the distinctive, well-recognized trade dress of the PAX Vaporizer (the "PAX Trade Dress").  *Id.* at ¶¶ 17-32 & Exs. A-F.  Plaintiff has obtained and owns federal trademark registrations on the principal register of the United States Patent and Trademark Office ("USPTO") for several of these marks:   Plaintiff's PLOOM, PLOOM (stylized), and PAX marks.  *Id.* at ¶¶ 17, 18, 21-23 & Exs. A- E.  Plaintiff has filed an application with the USPTO to register its X Design mark.  *Id.* at ¶¶ 24-25 & Ex. F.

Plaintiff has invested substantial financial and other resources in establishing the goodwill of these marks and promoting its products, including its investments in establishing the Ploom Website to promote and sell its products utilizing these marks.  *Id.* at ¶¶ 26, 32.  Plaintiff has been continuously and exclusively using the PLOOM and PLOOM (stylized) marks in commerce in the U.S. since at least early 2009, and has been continuously and exclusively using the PAX, PAX (stylized), and X Design marks in commerce in the U.S. since at least July 2012. *Id.* at ¶¶ 17, 21, 24.   These marks have become distinctive identifiers of goods offered by

---

(...continued from previous page)
temperature which is below the point of combustion, but which allows the compounds to be vaporized and inhaled. *See* Dkt. 1 at ¶ 1.

1   Plaintiff as a result of this continuous and exclusive use and Plaintiff's substantial marketing and

2   promotional efforts. *Id.* at ¶¶ 17, 21, 24, 32.

3       Defendants' Infringing Use of Plaintiff's Marks.   Defendants are citizens of

4   Massachusetts. *Id.* at ¶¶ 9-10.   They operate an e-commerce website under the trade name

5   iPloom (the "Infringing Website") at the Internet domain name <www.iploom.com>.

6   Defendants advertise and sell counterfeit versions of Plaintiff's PAX-branded vaporizer on the

7   Infringing Website. *Id.* at ¶ 16.   Defendant Marino registered the Infringing Domain Name in

8   September 2013, long after Plaintiff had begun using its marks in commerce. *Id.* at ¶ 34.

9       Defendants have advertised and sold two types of infringing vaporizers from the

10  Infringing Website.   The first type bears the marks "Pax" and "Pax II," and is referenced in

11  Defendants' marketing materials as "Pax" or "Pax II" or "New Pax" (the "iPloom Pax").   It is

12  designed to closely resemble the appearance of the genuine PAX Vaporizer.   The second type

13  bears the marks "Pax" and "Ploom," including stylized versions of the PAX and PLOOM marks

14  that are identical to Plaintiff's stylized versions of its PAX and PLOOM marks (the "Counterfeit

15  Pax").   The Counterfeit Pax also bears a mark identical to Plaintiff's X Design mark.   The

16  Counterfeit Pax appears virtually identical to the genuine Pax Vaporizer, and is sold in

17  packaging that is virtually identical to the genuine Pax Vaporizer packaging. *Id.* at ¶¶ 16, 33, 35-

18  36, 42, 45, 46 & Exs. G, H.

19      Defendants use or have used the marks IPLOOM, PLOOM, PLOOM (stylized), PAX,

20  PAX (stylized), and the X Design mark on the Infringing Website in connection with the

21  marketing and sale of the Counterfeit Pax and the iPloom Pax. *Id.* at ¶ 33 & Ex. G. These marks

22  are confusingly similar or identical to Plaintiff's marks. *Id.* at ¶ 1.  The trade dress of the iPloom

23  Pax is confusingly similar to the PAX Trade Dress, including in its size, shape, and color.   The

24  Counterfeit Pax trade dress is virtually identical to the PAX Trade Dress, including in its size,

25  shape, color, and use of a cutout in the vaporizer housing in the shape of the X Design. *Id.* at ¶¶

26  39-46 & Exs. G, H.   Defendants also use or have used the IPLOOM mark to market other

27  products, including tobacco and liquids for use in electronic cigarettes/vaporizers, on the

28  Infringing Website. *Id.* at ¶¶ 47-48 & Ex. G.

1   Plaintiff never authorized Defendants to use its trademarks or trade dress.  *Id.* at ¶ 49.

2   Defendants target the same California and U.S. consumers that Plaintiff targets by using

3   confusingly similar marks and trade dress, in order to intentionally create consumer confusion

4   and benefit from the goodwill Plaintiff has built up in its marks, trade dress, website, and

5   products.  This causes harm to Plaintiff.  *Id.* at ¶¶ 49-53.  Defendants purposefully direct their

6   marketing and sales activities to California, and cause harm they know will likely be suffered by

7   Plaintiff in California.  *Id.* at ¶¶ 38, 43, 53.  When confronted with the similarities between

8   Plaintiff's marks and Defendants' marks, Defendant Marino laughed and said, "All's fair in love

9   and war," and added that he was awaiting the delivery of 10,000 more iPloom Pax units in the

10  near future.  *Id.* at ¶ 37.

11  <u>The Current Lawsuit.</u>   By this lawsuit, Plaintiff seeks to end Defendants' unlawful

12  activities.  Plaintiff's Complaint includes the following causes of action:

13          (1) Infringement of Registered Trademarks under the Lanham Act, 15 U.S.C. § 1114;

14          (2) Federal Unfair Competition, False Representation and False Designation of Origin

15  under Lanham Act § 43(a), 15 U.S.C. § 1125(a);

16          (3) Violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. §

17  1125(d);

18          (4) Unlawful Business Practices under Cal. Bus. & Prof. Code § 17200 et seq.;

19          (5) False Advertising under Cal. Bus. & Prof. Code § 17500 et seq.;

20          (6) Common-Law Trademark and Trade Dress Infringement; and

21          (7) Common-Law Unfair Competition.

22          Plaintiff filed the Complaint on December 16, 2013.  Dkt. 1; Pfefferkorn Decl., ¶ 3.  The

23  summons for Defendants issued two days later.  Dkt. 7; Pfefferkorn Decl., ¶ 4.  Plaintiff served

24  the summons and a copy of the Complaint on each Defendant on December 24, 2013, and filed

25  proofs of service of process on each Defendant with this Court on December 26, 2013.  Dkt. 9-

26  10; Pfefferkorn Decl., ¶¶ 5-6.  Defendant Marino is not a minor, incompetent, or abroad in active

27  military service.  *See* Dkt. 16-1, ¶¶ 14-16; Pfefferkorn Decl., ¶ 7.

28

Defendants' answer or motion in response to the Complaint was due no later than January 14, 2014. Pfefferkorn Decl., ¶ 8. To date, neither Defendant has filed an answer or any other response to the Complaint. *Id*., ¶ 9. On February 4, 2014, Plaintiff sought entry of default against Defendants, and served a copy of its request on Defendants the same day. Dkt. 16-17; Pfefferkorn Decl., ¶¶ 10-11. On February 6, 2014, the Clerk entered default in this case against both Defendants. Dkt. 18; Pfefferkorn Decl., ¶ 12.

Since filing suit, Plaintiff's counsel has had no communication with Defendants. Pfefferkorn Decl., ¶ 14. Yet Defendants are and have been on notice of this lawsuit and of the claims asserted by Plaintiff against them: Plaintiff's counsel served Defendant Marino, as an individual and as agent for service of process of Defendant iPloom, with copies of the Complaint, Plaintiff's request for entry of default, and the resulting Clerk's notice entering default against them. Dkt. 9, 10, 17, 20; Pfefferkorn Decl., ¶¶ 2, 5, 11, 13; Pfefferkorn Decl. Exhibit ("Exh.") A (corporate registration for Defendant iPloom listing Defendant Marino as its registered agent).

An Injunction Is Required to Stop Defendants' Infringement. Defendants' awareness of the lawsuit has not caused them to cease or even reduce their infringing conduct; if anything, they have stepped up their infringement in the face of Plaintiff's efforts to stop it. For instance, since the filing of the action, Defendants have engaged in a pattern of shifting from one Internet domain name to another in order to escape Plaintiff's efforts to shut down their infringing sales. Pfefferkorn Decl., ¶ 16. It has been a frustrating "whack-a-mole" effort: each time Plaintiff takes action to suspend a website where Defendants sell infringing goods, they register a new domain name and start another such website.

After Plaintiff submitted a takedown request to Defendants' web hosting provider for the Infringing Website on or about January 22, 2014, the hosting provider notified Defendants of Plaintiff's complaint and temporarily took the Infringing Website offline. *Id*., ¶ 17. While the Infringing Website was down, Defendant Marino registered a second domain name, <www.aroma420.com>, from which Defendants continued to offer for sale counterfeit PAX Vaporizers. *Id*., ¶ 18. The Infringing Website was restored on or about February 3, 2014. *Id*., ¶

19.   As of the date of this filing, Defendants continue to use the original Infringing Website to offer for sale counterfeit PAX Vaporizers using Plaintiff's trademarks and trade dress.  *Id*.  In addition, since early February, Defendants have registered at least two more domain names, <www.aromatherapy420.com> and <www.aroma-warehouse.com>, and set up new websites at those domain names from which they have offered counterfeit PAX Vaporizers for sale using Plaintiff's trademarks and trade dress.  *Id*., ¶ 20.  Defendants have also engaged in an email advertising campaign marketing counterfeit PAX Vaporizers in connection with at least one of these new websites.  *Id*., ¶ 21.  Plaintiff has recently submitted trademark complaints to the website hosting providers for these new websites in an attempt to suspend Defendants' infringing activities through those channels; Defendant Marino has already switched hosting providers for at least one recently-created website.  *Id*., ¶¶ 24-25.

Defendants' ongoing marketing and sale of counterfeit products following the initiation of this lawsuit and following entry of default underscore Plaintiff's pressing need for a court judgment enjoining Defendants from further engaging in the unlawful conduct alleged in the Complaint.   Accordingly, Plaintiff seeks a default judgment on the claims asserted in the Complaint and relief consisting of a permanent injunction, the transfer of the Infringing Domain Name to Plaintiff, and statutory damages and attorney's fees, in the manner and form set forth below and submitted herewith.

### III.   ARGUMENT

**A.     Legal Standard for Default Judgment**

Under Federal Rule of Civil Procedure 55, defendants who "have failed to plead or otherwise defend" shall be found to be in default by the Clerk of the Court.  Fed. R. Civ. P. 55(a).  Once default has been entered by the Clerk, the plaintiff may apply for a default judgment. Fed. R. Civ. P. 55(b).  On a motion for default judgment, the factual allegations of the Complaint, except those relating to damages, are taken as true.  *See TeleVideo Sys.*, 826 F.2d at 917-18; *Allstate Ins. Co. v. Tankovich*, 776 F. Supp. 1394, 1399 (N.D. Cal. 1991).  Here, accordingly, entry of default by the Clerk establishes Defendants' liability, and only the question of relief remains.

**B.      Default Against the Defendants Was Properly Entered**

Pursuant to Federal Rule of Civil Procedure 55(a), a clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

Plaintiff served the summons and a copy of the Complaint on both Defendants on December 24, 2013.  Dkt. 9-10; Pfefferkorn Decl., ¶ 5.  Plaintiff thus effectuated proper service on Defendants Marino and iPloom.  Defendants' response to the Complaint was due on January 14, 2014.  Pfefferkorn Decl., ¶ 8.  To date, neither Defendant has filed an answer or any response to the Complaint, nor made any appearance whatsoever in this action.  Pfefferkorn Decl., ¶ 9.  The Clerk of Court properly entered default against Defendants.[2]  Plaintiff is now entitled to a default judgment against Defendants, as further explained below.

**C.      Jurisdiction and Venue Are Proper**

**1.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over the first cause of action for infringement of federally registered trademarks under the Lanham Act, pursuant to 28 U.S.C. § 1338, which grants district courts original jurisdiction for actions arising from Acts of Congress related to trademarks.  This Court also has subject matter jurisdiction over the first, second, and third causes of action under the federal Lanham Act and the Anticybersquatting Consumer Protection Act, pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the remaining state- and common-law causes of action pursuant to 28 U.S.C. § 1367, as the remaining claims are so closely related to the first three causes of action that they form part of the same case or controversy.  This Court also has subject matter jurisdiction over the fourth and seventh causes of action for state and common-law unfair competition under 28 U.S.C. § 1338(b), because the unfair-competition claims are joined to a substantial and related trademark claim.

---

[2] Plaintiff subsequently served on Defendants copies of Plaintiff's request for entry of default and the subsequent notice by the Clerk of Court entering default against them.  Dkt. 9, 10, 17, 20; Pfefferkorn Decl., ¶¶ 11, 13.  Both Defendants are thus on notice of the instant action and of their default status.

1    **2.  Personal Jurisdiction**

2            California's long-arm statute, Cal. Code Civ. Proc. § 410.10, extends jurisdiction to the

3    limits of due process.  *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996).  The exercise

4    of jurisdiction over Defendants by this Court comports with due process.  Given California's

5    "manifest interest" in providing its residents "with a convenient forum for redressing injuries

6    inflicted by out-of-state actors," Defendants may not use the Due Process Clause "as a territorial

7    shield" to avoid being held to account in California for consequences proximately caused here by

8    their voluntary interstate activities from which they "purposefully derive benefit."  *Burger King*

9    *Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985).  Defendants may therefore be held

10   accountable in this District for the harm they caused here by their voluntary interstate sales and

11   marketing activities, through the Infringing Website and otherwise.

12           The Supreme Court has established two bases for personal jurisdiction: (1) general

13   jurisdiction, which permits the exercise of jurisdiction over all claims, whether or not related to

14   the defendant's contacts with the state, and (2) specific jurisdiction, which exists when the

15   defendant's contacts with the forum give rise to the claims asserted by the plaintiff.  *Helicopteros*

16   *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  The Court has both general

17   and specific jurisdiction over Defendants in the case at bar.

18           **a.  The Court Has General Jurisdiction over Defendants**

19           The exercise of general jurisdiction requires that a defendant's contacts with the forum be

20   so "continuous and systematic" as to approximate a physical presence in that district.  *Id.* at 415;

21   *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  What is

22   relevant is whether the "defendant makes sales, solicits, or engages in business in the state, [or]

23   serves the state's markets."  *Bancroft & Masters*, 223 F.3d at 1086.  Defendants transact and do

24   business in California, including by making sales and engaging in marketing activities in

25   California, including over the phone, by e-mail, and through the Infringing Website, which is

26   accessible throughout the United States and abroad, including from California and this District.

27   Defendants target the same California consumers that Plaintiff targets.  Dkt. 1 at ¶¶ 5, 37, 38, 43,

28

1   44, 49.   In sum, Defendants' activities in California combine to constitute "continuous and
2   systematic" business contacts with the forum.

3       **b.   The Court Has Specific Jurisdiction over Defendants**

4       Specific jurisdiction requires (1) that the defendant did some act or consummated some
5   transaction in the district by which it purposefully availed itself of the privilege of conducting
6   activities in the district; (2) that the plaintiff's claims arise out of that activity; and (3) that the
7   Court's exercise of jurisdiction is reasonable.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557
8   F.2d 1280, 1287 (9th Cir. 1977).   Plaintiff's allegations and supporting evidence in the
9   Complaint satisfy all three of the requirements for specific jurisdiction.

10          **i.   Purposeful Availment**

11      Defendants purposefully availed themselves of the benefits of doing business in
12   California by consummating transactions with customers in this District and throughout
13   California, while knowingly harming Plaintiff's San Francisco-based business, reputation, and
14   goodwill in California and this District.  Defendants use means including the Infringing Website
15   to sell, falsely advertise, and pass off their inferior counterfeit products as authentic Ploom
16   products in California.  *E.g.*, Dkt. 1 at ¶¶ 5, 6, 38, 43, 53, 97, 111 & Ex. G.

17      The Infringing Website supports the exercise of personal jurisdiction here.   "By
18   advertising and offering its products for sale via the internet, [a defendant] has placed its
19   products into the stream of commerce intending that they would be purchased by consumers with
20   access to the Web, including California citizens."  *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d
21   1074, 1078 (C.D. Cal. 1999).  Defendants intended for consumers in California (and throughout
22   the country) to place orders by credit card through the Infringing Website, and consumers in
23   California and throughout the country have in fact done so.  Dkt. 1 at ¶¶ 5, 6, 38, 43 & Ex. G.

24      Defendants' infringing activities likewise support the exercise of jurisdiction.   In tort
25   actions such as this, specific jurisdiction is established if the defendant engages in an act that has
26   an effect in the forum, even if the act itself takes place outside the forum.  *Roth v. Garcia*
27   *Marquez*, 942 F.2d 617, 621 (9th Cir. 1991).  The effects of trademark violations occur in the
28   forum where the infringing goods or services are offered, because that is where the confusion or

1   injury to business reputation occurs and where a plaintiff's business is harmed.  *See Sidco Indus.*

2   *Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346-47 (D. Or. 1991) ("The cause of action for

3   a trademark violation arises in the place where the confusion is likely to occur").  Defendants use

4   the Infringing Website to purposefully direct to California consumers their marketing and sales

5   activities for counterfeit products bearing marks and trade dress that Defendants know infringe

6   Plaintiff's marks and trade dress.  *E.g.*, Dkt. 1 at ¶¶ 5, 37, 52, 53, 111.  This satisfies the

7   purposeful availment requirement necessary for specific personal jurisdiction.[3]

8                    **ii.    Plaintiff's Claims Arise from Defendants' Activities**

9          As noted, Plaintiff is based in this District, and Defendants offer, sell, falsely advertise,

10  and pass off their trademark-infringing goods as authentic Ploom products in this District.

11  Therefore, the harm to Plaintiff's business, reputation, and goodwill occurs here and Plaintiff's

12  claims arise in this District.

13                   **iii.   Personal Jurisdiction in This District Is Reasonable**

14         Once purposeful availment is established, jurisdiction is presumptively reasonable, *see*

15  *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 315 (9th Cir. 1987), and the burden is on the

16  defendant to defeat jurisdiction by "present[ing] a compelling case that the presence of some

17  other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477.

18  Defendants have not appeared and thus have presented no such arguments.  Accordingly, the

19  exercise of personal jurisdiction over Defendants in this action is presumed to be reasonable.[4]  In

20  sum, the Court may properly exercise personal jurisdiction over Defendants in this action.

21  _____

22       [3] While Defendants are located in Massachusetts, not California, physical presence in a
    district is not necessary to establish purposeful availment.  *See World-Wide Volkswagen Corp. v.*
23  *Woodson*, 444 U.S. 286, 297-98 (1980) (noting that a "forum State does not exceed its powers
    under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its
24  products into the stream of commerce with the expectation that they will be purchased by
    consumers in the forum State"); *Stomp Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal.
25  1999) (purposeful availment prong met based upon website and sales in forum).

26       [4] A reasonableness analysis would fully support the presumption of reasonableness.  The
    following factors are considered:  (1) the extent of the defendant's purposeful interjection into
27  the forum state; (2) the burden on the defendant of defending in the forum; (3) the plaintiff's
    interest in convenient and effective relief; (4) the most efficient forum for judicial resolution of
28  the dispute; (5) the forum state's interest in adjudicating the dispute; and (6) the extent of the
                                                                                        (continued...)

**3. Venue**

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As explained more fully above with respect to personal jurisdiction, a substantial part of Defendants' conduct that gave rise to Plaintiff's trademark and trade dress infringement, false advertising, unfair competition, and related claims occurred in this District. Thus, venue is proper in this District.

**D.   Plaintiff Is Entitled to Injunctive Relief, Transfer of the Infringing Domain Name, and Statutory Damages**

The factual allegations of the Complaint, which are now established as true by the Clerk's entry of default on February 6, 2014, are sufficient to establish, at a minimum, Defendants' liability for Infringement of Registered Trademarks under the Lanham Act, 15 U.S.C. § 1114; Federal Unfair Competition, False Representation and False Designation of Origin under Lanham Act § 43(a), 15 U.S.C. § 1125(a); Violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d); Unlawful Business Practices under Cal. Bus. & Prof. Code § 17200 et seq.; False Advertising under Cal. Bus. & Prof. Code § 17500 et seq.; Common-Law Trademark and Trade Dress Infringement; and Common-Law Unfair Competition. As set forth in the Complaint's prayer for relief, these claims entitle Plaintiff to an injunction against Defendants, as well as statutory damages and the other relief set forth below.

---

(...continued from previous page)
conflict with the sovereignty of the defendant's state. *See T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 315 (9th Cir. 1987). Defendants, both Massachusetts citizens, purposefully directed their business activities toward California, harming Plaintiff here. The burden on Defendants is reasonable given "the advances in transportation and telecommunications and the increasing interstate flow of law." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (internal quotation marks omitted). There is no apparent conflict with the sovereignty of Massachusetts, as California has a strong interest in allowing a local Plaintiff to seek redress here for injuries caused here by Defendants' acts, which affected not just Plaintiff, but California consumers as well. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988); *see also Nissan Motor Co. Ltd. v. Nissan Computer Corp.*, 89 F.Supp.2d 1154, 1161 (C.D. Cal. 2000) ("California has a strong interest in protecting its citizens from trademark infringement and consumer confusion"). Even if an alternative forum exists, this is a convenient forum for the adjudication of the matter, as Plaintiff is based here, California is the likely location of many witnesses and sources of evidence, and the Infringing Website is equally accessible from here as from any other forum.

**1. Plaintiff Is Entitled to a Permanent Injunction**

      **a. Federal and Common-Law Trademark and Trade Dress Infringement**

Defendants infringe Plaintiff's trademarks and trade dress by using in commerce

(1)     marks identical or confusingly similar to (a) Plaintiff's federally-registered PLOOM, PLOOM (stylized), and PAX marks and (b) Plaintiff's PAX (stylized) and X Design marks;

(2)     the IPLOOM mark, which is confusingly similar to Plaintiff's federally-registered PLOOM mark;

(3)     trade dress that is confusingly similar to Plaintiff's PAX Trade Dress; and

(4)     the Infringing Domain Name,

to market and sell counterfeit products in a manner that is likely to cause confusion, deception or mistake among consumers.

      Plaintiff has therefore established the elements of its first and sixth causes of action. It is entitled to an injunction against Defendants pursuant to 15 U.S.C. § 1116.

      **b. Violation of Lanham Act § 43(a); Common-Law Unfair Competition**

      By marketing and selling counterfeit products and passing them off as authentic Ploom products, Defendants are making materially false representations of fact and are using in commerce trademarks and trade dress highly similar or identical to Plaintiff's trademarks and trade dress, in a manner that causes or is likely to cause confusion, mistake, deception, or misunderstanding as to source, origin, sponsorship, affiliation, or approval of Defendants' goods. Such conduct constitutes federal and common-law unfair competition as well as false representation and false designation of origin in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). Plaintiff has therefore established the elements of its second and seventh causes of action. It is entitled to an injunction against Defendants pursuant to 15 U.S.C. § 1116.

      **c. Unlawful Business Practices and False Advertising (CAL. BUS. & PROF. CODE §§ 17200 & 17500)**

      Defendants' use of marks and trade dress confusingly similar or identical to Plaintiff's marks and trade dress on the Infringing Website, in Defendants' marketing and sales materials

1   (such as e-mails to iPloom customers), and on materials such as packaging and user guides for

2   Defendants' counterfeit products, constitutes unlawful and unfair business practices in violation

3   of Cal. Bus. & Prof. Code § 17200.  This conduct also constitutes unfair, deceptive, untrue, or

4   misleading advertising in violation of Cal. Bus. & Prof. Code § 17500.  Defendants' use of these

5   marks in connection with offers to sell their counterfeit goods is disseminated to and received by

6   the public in California via the Infringing Website.  Plaintiff has therefore established the

7   elements of its fourth and fifth causes of action.  It is entitled to an injunction against Defendants

8   pursuant to Cal. Bus. & Prof. Code §§ 17200 and 17535.

9       **2.  Plaintiff Is Entitled to Transfer of the Infringing Domain Name Under the
          Anticybersquatting Consumer Protection Act (ACPA)**

10

11      Long after Plaintiff established its rights in its federally-registered PLOOM mark,

12  Defendant Marino registered the Infringing Domain Name, <www.iploom.com>.  The Infringing

13  Domain Name is confusingly similar to Plaintiff's distinctive PLOOM mark.  Defendants have

14  used and continue to use the Infringing Domain Name in order to market and sell counterfeit

15  Ploom products, with the intent to divert consumers seeking Plaintiff's goods for Defendants'

16  own commercial gain.  Plaintiff has therefore established the elements of its third cause of action

17  for violation of the ACPA, 15 U.S.C. § 1125(d).  It is entitled to an order for the transfer of the

18  Infringing Domain Name to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C).

19      **3.  Plaintiff Is Entitled to Statutory Damages**

20      The factual allegations of the Complaint (established as true by the Clerk's entry of

21  default) are also sufficient to establish Plaintiff's entitlement to statutory damages for (1)

22  Defendants' use of counterfeit marks as defined in 15 U.S.C. § 1116(d)(1)(B)(i) in connection

23  with the marketing and sale of (a) the iPloom Pax product and (b) the Counterfeit Pax product,

24  and (2) Defendants' violation of the ACPA, 15 U.S.C. § 1125(d).

25          **a.  Statutory Damages for Willful Use of Counterfeit Marks to Market and Sell
              iPloom Pax and Counterfeit Pax**

26

27      Plaintiff's PLOOM, PLOOM (stylized), and PAX marks are in use and are registered on

28  the principal register of the USPTO.  Defendants have used counterfeits of these marks in

1   connection with the sale and offering for sale of the infringing iPloom Pax and the Counterfeit

2   Pax.  These uses of the counterfeit marks (as defined in 15 U.S.C. § 1116(d)) cause or are likely

3   to cause confusion, mistake, or deception, in violation of 15 U.S.C. § 1114(1)(a).  Accordingly,

4   Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c) for (1) each of the

5   marks PLOOM and PAX in connection with the iPloom Pax, and (2) each of the marks PLOOM,

6   PLOOM (stylized), and PAX in connection with the Counterfeit Pax.

7          Furthermore, Plaintiff is entitled to increased statutory damages because Defendants' use

8   of these counterfeit marks was willful.   "Willful infringement occurs when the defendant

9   knowingly and intentionally infringes on a trademark. . . . Willfulness can also be inferred from a

10  defendant's failure to defend." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050-

11  51 (N.D. Cal. 2010) (internal citations omitted) (finding willfulness where defendant's infringing

12  conduct was likely to confuse, mistake, or deceive customers and defendant "fail[ed] to comply

13  with the judicial process or to participate in a meaningful way" in the case).  Here, Defendants

14  have not appeared, and their infringements are knowing and intentional:  Defendant Marino has

15  openly acknowledged that he knows "all about" Plaintiff but is not affiliated with Plaintiff, and

16  laughed and said "All's fair in love and war" when asked about the similarities between

17  Plaintiff's marks and Defendants' marks.  Dkt. 1 at ¶ 37.  Accordingly, Plaintiff is entitled to a

18  finding of willfulness and a heightened award of statutory damages pursuant to 15 U.S.C. §

19  1117(c)(2).

20          **b.  Statutory Damages for Infringing Domain Name**

21          With a bad-faith intent to profit from Plaintiff's PLOOM mark, Defendants registered

22  and use the Infringing Domain Name <www.iploom.com>, which is confusingly similar to

23  Plaintiff's distinctive PLOOM mark.  Plaintiff is therefore entitled to statutory damages pursuant

24  to 15 U.S.C. § 1117(d) for the registration and use of the Infringing Domain Name in violation of

25  15 U.S.C. § 1125(d)(1).  Defendants' willfulness, as discussed above, merits a damages amount

26  at the upper end of the statutory damages range.

27

28

1      **4.   Plaintiff Is Entitled to Attorney's Fees**

2            The Lanham Act permits the recovery of reasonable attorney's fees by a prevailing

3      plaintiff in "exceptional cases."  15 U.S.C. § 1117(a).  A trademark case is exceptional where the

4      defendant acted maliciously, fraudulently, deliberately, or willfully.  *Earthquake Sound Corp. v.*

5      *Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003).   For the reasons explained above,

6      Defendants' conduct in this case was willful and deliberate.  Defendants knew of and intended to

7      harm Plaintiff by their infringing activity, and used such means as counterfeit marks, infringing

8      trade dress, false advertising, and the Infringing Domain Name to deceive consumers and

9      compete directly with Plaintiff.  The case is therefore exceptional, and Plaintiff is entitled to its

10     attorney's fees.[5]

11     **5.   Plaintiff Is Entitled to Its Costs**

12            Under the Lanham Act, a plaintiff that prevails on an ACPA claim is entitled to costs.  15

13     U.S.C. § 1117(a); *eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL 2367805, at *19-20

14     (N.D. Cal. June 21, 2012) (magistrate's report recommending $100,000 maximum statutory

15     damages and costs on ACPA claim), *adopted in full*, No. CV-11-05398 RMW (JCS), 2012 WL

16     4005454 (N.D. Cal. Sept. 11, 2012).  As explained above, Defendants are liable to Plaintiff on its

17     ACPA claim, and Plaintiff is therefore entitled to an award of costs consistent with Civil Local

18     Rule 54.

19

20

21  _____

22      [5] While an election to receive statutory damages under 15 U.S.C. § 1117(c) precludes an
    award of attorney's fees under § 1117(b), *see K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079 (9th Cir.
23  2007), Plaintiff is nevertheless entitled to fees on its Lanham Act § 43(a) claims and the ACPA
    claim.  15 U.S.C. § 1117(a); *see Int'l Bancorp, L.L.C. v. Societe des Baines de Mer et du Cercle*
24  *des Etrangers a Monaco*, 192 F. Supp. 2d 467, 490-91 (E.D. Va. 2002) ("exceptional" ACPA
    cases "warrant[] attorneys' fees"); *Aztar Corp. v. MGM Casino*, No. NO. 00-833-A, 2001 WL
25  939070, at *6 (E.D. Va. Apr. 9, 2001) (awarding both $100,000 statutory damages and attorney's
    fees on ACPA claim).  And because these other claims are supported by the same proof as that
26  required for its claim for infringement of its registered trademarks, the claims are "inextricably
    intertwined."  Plaintiff is therefore entitled to "an award of all fees reasonably incurred."
27  *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 439-40 (C.D. Cal. 2012)
    (citing *Louis Vuitton Malletier S.A. v. LY USA Inc.*, 676 F.3d 83 (2d Cir. 2012) (distinguishing *K*
28  *& N Engineering*, 510 F.3d 1079)).

1

### IV.   CONCLUSION

2        For the reasons set forth herein, Plaintiff seeks a permanent injunction, transfer of the

3   infringing <www.iploom.com> domain name, statutory damages, costs, and attorney's fees in

4   the manner and form submitted herewith in Plaintiff's Proposed Order.  Without such an Order,

5   Plaintiff will continue to suffer significant economic harm, to be unable to protect its

6   professional reputation, to suffer damage to the goodwill it enjoys in its trademarks and trade

7   dress, and to suffer other great and irreparable harm.   Since the filing of the Complaint,

8   Defendants have continued and intensified their conduct which Plaintiff seeks to restrain, so the

9   prompt issuance of such an Order is essential to prohibit Defendants from continuing to seriously

10   injure Plaintiff.   Accordingly, Plaintiff respectfully requests that the Court grant its Motion for

11   Default Judgment and issue an Order granting Plaintiff the relief requested in the Proposed

12   Order.

13

14                                              Respectfully submitted,

15   Dated:  March 18, 2014                     WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation
16

17                                              By: /s/ Colleen Bal

18                                                  Colleen Bal
                                                    Riana S. Pfefferkorn
19
                                                Attorneys for Plaintiff
20                                              PLOOM, INC.

21

22

23

24

25

26

27

28