**United States District Court**
For the Northern District of California

1
2
3
4                IN THE UNITED STATES DISTRICT COURT
5            FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9
10
11
12
13
14
15
16

| | |
|---|---|
| PLOOM, INC., | ) Case No. 13-cv-05813 SC |
| Plaintiff, | ) ORDER GRANTING MOTION FOR<br>) <u>DEFAULT JUDGMENT</u> |
| v. | ) |
| IPLOOM, LLC, and ANTHONY MARINO, | ) |
| Defendants. | ) |

17 **I.**    **<u>INTRODUCTION</u>**

18      Plaintiff Ploom, Inc. ("Ploom") seeks the entry of a default

19 judgment against Defendants iPloom, LLC ("iPloom") and Anthony

20 Marino ("Defendants"). ECF No. 21 ("Mot."). Ploom filed this

21 action on December 16, 2013, asserting federal claims for trademark

22 infringement, 15 U.S.C. § 1114; unfair competition, false

23 representation, and false designation of origin, <u>id.</u> § 1125(a);

24 cybersquatting, <u>id.</u> § 1125(d); and related claims under state law

25 and common law, for Defendants' alleged sale of counterfeit Ploom

26 products. <u>See</u> ECF No. 1 ("Compl.") at 8-22. Having considered the

27 papers submitted by Ploom, the Court concludes that an award of

28 default judgment against Defendants is appropriate, and GRANTS

Ploom's Motion.

## II.   <u>BACKGROUND</u>

Except where otherwise indicated, the following allegations are taken from Ploom's Complaint.  Ploom designs and sells vaporizers (devices that heat tobacco for inhalation without smoke), tobacco, and related accessories.  Compl. ¶ 13.  Ploom's unique products include the "Ploom modelTwo" and "PAX" vaporizers, which it markets exclusively on its website and through authorized retailers.  <u>Id.</u> ¶ 14.  Ploom owns a number of federally registered trademarks, including the name PLOOM, as well as a stylized version of that brand name (the "Ploom Marks").  <u>Id.</u> ¶¶ 18-20.  Ploom also holds two trademarks for the PAX product name (the "PAX Marks").  <u>Id.</u> ¶¶ 21-23.  Finally, Ploom has filed for federal registration of the "X Design" trade dress it uses to identify its PAX vaporizer.  <u>Id.</u> ¶¶ 25, 31.  The Ploom Marks and Pax Marks are valuable because Ploom has invested substantial resources in establishing recognition of its brand.  <u>Id.</u> ¶¶ 26-32.

Ploom alleges that Defendants used reproductions of the Ploom Marks, X Design trade dress, and the PAX Marks in creating the "iPloom Pax" and "Pax by Ploom" vaporizers.  <u>Id.</u> ¶¶ 35-46.  Ploom claims that these vaporizers are counterfeit products that infringe upon Ploom's trademarks.  <u>Id.</u> ¶¶ 55-56.  Ploom has never authorized iPloom to use its trademarks or trade dress.  <u>Id.</u> ¶ 49.  IPloom sold the iPloom Pax and Pax by Ploom vaporizers on its website, www.iploom.com.  Photographs of the products displayed on the website show use of Ploom Marks, Pax Marks, and X Design.  <u>Id.</u> ¶¶ 33-35 & Ex. G.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    In October of 2013, a private investigator retained by Ploom

2  purchased two iPloom Pax units from Defendants' website for a total

3  of $159.90.  Upon delivery of the units, the investigator

4  discovered that the units' packaging included the mark "PAX."  Id.

5  ¶¶ 38-40 & Ex. H.  The iPloom Pax also had a size, shape, and trade

6  dress very similar to the Ploom Pax's.  Id.  On October 21, 2013,

7  Ploom's investigator contacted iPloom by calling the phone number

8  listed on Defendants' website.  The investigator spoke with Mr.

9  Marino, who stated that he was not affiliated with Ploom, but said

10 "I know all about them."  Id. ¶ 37.  The investigator mentioned the

11 similarities between the Ploom Marks and the marks used on iPloom

12 products, as well as the Defendants' use of the Pax Marks.  Mr.

13 Marino laughed and said, "All's fair in love and war."  Id.  Mr.

14 Marino also told the investigator that he was expecting a delivery

15 of 10,000 units of the "Pax II" in the next week.  Id.

16   On December 9, 2013, another of Ploom's investigators placed

17 an order on iPloom's website for one Pax by Ploom for a total of

18 $199.95.  The next day, the investigator received an email from

19 acmarino@iploom.com informing the investigator that the Pax by

20 Ploom products were backordered, but that a new shipment was due on

21 December 16.  Id. ¶¶ 43-44.  The Complaint does not specify whether

22 the second investigator ever received this order.

23   In January of 2014, Ploom submitted a takedown request to

24 Defendants' web hosting provider.  The hosting provider

25 communicated the request to iPloom and shut down the website eleven

26 days later.  ECF No. 16-1 ("Pfefferkorn Decl. II") ¶ 17.

27 Defendants then switched hosting providers, registered the domain

28 aroma420.com, and continued to sell their products from that

website.  Id. ¶¶ 18-19.  Defendants have also registered at least two other domain names to sell their products and have started an email-based advertising campaign.  Id. ¶¶ 20-25 & Exs. A-B. Neither defendant has responded to any of the summonses issued in this action or participated in these proceedings in any way.

### III. **LEGAL STANDARD**

After entry of a default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b)(2).  Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors.

As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default judgment is requested."  Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, *2 (N.D. Cal. Jan. 2, 2001).  If the Court determines that service was sufficient, it may consider the following factors in its decision on the merits of a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will

be taken as true." <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977).  Therefore, for the purposes of this Motion, the Court accepts as true the facts as presented in the Complaint.

**IV.** <u>**DISCUSSION**</u>

    **A.**   <u>**Adequacy of Service**</u>

Federal Rule of Civil Procedure 4(h) provides that a corporation, partnership, or other unincorporated association may be served in the manner prescribed by Rule 4(e)(1), which allows service to be perfected in the manner prescribed by state law. California law provides that a corporation or unincorporated association may be served by delivery of a copy of the summons and complaint:

> To the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process.

Cal. Civ. Proc. Code § 416.10.  Federal Rule of Civil Procedure 4(e)(2)(A) provides that an individual may be served in a judicial district of the United States by "delivering a copy of the summons and of the complaint to the individual personally."

Here, service was delivered personally to Anthony Marino, both in his capacity as an individual and in his capacity as the authorized agent and principal officer of iPloom, on December 24, 2013.  ECF No. 10 ("Marino Proof of Service"); ECF No. 22 ("Pfefferkorn Decl. I") Ex. A; ECF No. 9 ("iPloom Proof of Service").  The Court finds that service of process upon defendants

**United States District Court**
For the Northern District of California

1  iPloom and Anthony Marino was adequate and complete by December 24,
2  2013.

3

4      **B.    Default Judgment**

5      After entry of a default, a court may grant a default judgment
6  on the merits of the case.  See Fed. R. Civ. P. 55.  A default
7  judgment may not be entered, however, against an infant or
8  incompetent person unless represented in the action by a general
9  guardian or other such representative who has appeared.  See id.
10 Furthermore, a default judgment may not be entered against an
11 individual in military service until after the court appoints an
12 attorney to represent the defendant.  See 50 U.S.C. app. § 521.
13 Mr. Marino is not an infant, incompetent person, or person in
14 military service.  Pfefferkorn Decl. II ¶¶ 14-16.  Accordingly, the
15 Court may consider whether a default judgment may be entered
16 against Defendants.

17     Here, the majority of the Eitel factors favor default
18 judgment.

19         **1.    Prejudice**

20     Ploom has tried to work with web hosting providers and
21 Defendants' referral service to shut down Defendants' websites that
22 sell counterfeit Ploom products.  Defendants responded by creating
23 new websites, with new hosting providers, and continuing to sell
24 their products.  If the motion for default judgment were to be
25 denied, then Ploom would likely be left without a remedy, as its
26 efforts to shut down Defendants' operations have been unsuccessful.
27 Thus, Ploom would be prejudiced absent entry of default judgment.
28 //

**United States District Court**
For the Northern District of California

<div style="writing-mode: vertical">**United States District Court** For the Northern District of California</div>

1   **2.   Merits of Plaintiffs' Substantive Claims and**

2   **Sufficiency of the Complaint**

3   Taken together, the second and third Eitel factors essentially

4   require that "a plaintiff state a claim on which [it] may recover."

5   Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D.

6   Cal. 2002) (internal quotations omitted).  Ploom asserts claims for

7   (1) trademark counterfeiting and infringement, 15 U.S.C. § 1114;

8   (2) unfair competition, false representation, and false designation

9   of origin, id. § 1125(a); (3) cybersquatting, id. § 1125(d); and

10  (4) related claims under state and common law.  See Compl. at 8-22.

11  Ploom seeks to recover statutory damages in lieu of actual damages

12  as relief.  Mot. at 14-15; see 15 U.S.C. §§ 1117(c)-(d).

13  Accordingly, the Court examines only Ploom's claims for which

14  statutory damages are available -- its claims for trademark

15  counterfeiting and infringement, see 15 U.S.C. § 1117(c) (providing

16  for statutory damages for trademark counterfeiting), and

17  cybersquatting see id. § 1117(d) (providing for statutory damages

18  for cybersquatting).  See also Chanel, Inc. v. Tshimanga, No. C-07-

19  3592, 2008 U.S. Dist. LEXIS 118783, *17 (N.D. Cal. July 15, 2008)

20  (adopting same approach).

21  To prevail on its trademark infringement claim, Ploom must

22  prove that, without its consent, Defendants used in commerce a

23  reproduction or copy of Ploom's registered trademark in connection

24  with the sale or advertising of any goods or services, and that

25  such use is likely to cause confusion, mistake, or deceive

26  customers.  15 U.S.C. § 1114(1)(a); Brookfield Commc'n v. West

27  Coast Entm't, 174 F.3d 1036, 1046-47 (9th Cir. 1999).  As outlined

28  in Part I above, Ploom has properly alleged all of these elements.

**United States District Court**
For the Northern District of California

1   Taking these allegations to be true, as the Court must, Ploom has
2   adequately stated a claim on which it may recover.

3        To prevail on its cybersquatting claim, Ploom must prove that
4   iPloom (1) registered or used a domain name that was identical or
5   confusingly similar to Ploom's distinctive registered trademark
6   with (2) a bad faith intent to profit from Ploom's mark.  Ploom
7   alleges that iPloom registered the iploom.com domain name, which is
8   confusingly similar to the Ploom Marks and Ploom's domain,
9   ploom.com.  The Ninth Circuit has developed the Sleekcraft factors
10  to determine whether potentially infringing marks are confusingly
11  similar.  Those factors are: "(1) the similarity of the marks; (2)
12  the relatedness of the two companies' services; (3) the marketing
13  channel used; (4) the strength of [Plaintiff's] mark; (5) [the
14  Defendants'] intent in selecting its mark; (6) evidence of actual
15  confusion; (7) the likelihood of expansion into other markets; and
16  (8) the degree of care likely to be exercised by purchasers."
17  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir.
18  2000).  "In the context of the Web in particular, the three most
19  important Sleekcraft factors are (1) the similarity of the marks,
20  (2) the relatedness of the goods or services, and (3) the
21  simultaneous use of the Web as a marketing channel."  Id. (internal
22  quotation marks omitted).

23       With regard to the similarity factor, there can be no doubt
24  that iPloom and Ploom are very similar.  The companies also provide
25  virtually identical services: selling vaporizers and other tobacco
26  products.  IPloom's products were made to look like, and some were
27  apparently even advertised as, legitimate Ploom products.  Both use
28  the Internet to sell their products.  Ploom has produced evidence

**United States District Court**
For the Northern District of California

1  of the strength of its mark based on the uniqueness of its product,
2  substantial press coverage, and significant traffic to its website.
3  Compl. ¶¶ 26-30.  There is little evidence regarding Defendants'
4  intent, but much can be inferred by the fact that the iPloom Pax
5  and Pax by Ploom appeared to be its flagship products.  Compl. Ex.
6  G.  No evidence has been presented on the last three factors.
7  Given that the first five factors strongly favor a finding of
8  confusing similarity, and the Ninth Circuit's emphasis on three
9  that particularly favor that finding in this context, the Court
10 finds that the domain iploom.com was confusingly similar to Ploom's
11 ploom.com domain.

12      Ploom must also demonstrate that Defendants registered the
13 iploom.com domain with bad faith intent to profit from Ploom's
14 marks.  The facts Ploom has pled demonstrate that Defendants
15 registered the iploom.com domain with the intention of profiting by
16 selling counterfeit Ploom products.  The similarity of the marks,
17 the similarity of the products offered for sale by Defendants, and
18 Mr. Marino's statements establishing his knowledge of Ploom's brand
19 are sufficient evidence of the required bad faith intent.  Ploom
20 has adequately stated a claim on which it may recover.

21              **3.  <u>Amount of Money at Stake</u>**

22      Pursuant to the fourth <u>Eitel</u> factor, "the court must consider
23 the amount of money at stake in relation to the seriousness of
24 Defendant's conduct."  <u>Pepsico</u>, 238 F. Supp. 2d at 1176.  Here,
25 iPloom has engaged in the advertising, sale, and distribution of
26 counterfeit goods bearing at least three of Ploom's marks.
27 Defendants' continued sale of counterfeit Ploom merchandise despite
28 this lawsuit and multiple attempts by Ploom to shut down

**United States District Court**
For the Northern District of California

1  Defendants' website augments the seriousness of Defendants'

2  conduct.  Given Defendants' disregard of these attempts, the

3  likelihood that Defendants' conduct may cause confusion or mistake

4  or otherwise deceive customers, and Defendants' failure to comply

5  with the judicial process or to participate in any way in the

6  present litigation, the imposition of a substantial monetary award

7  is justified.  The amount of money at stake is therefore

8  proportionate to Defendants' conduct, especially in light of the

9  fact that the size of the award is limited by what the Court

10 considers just.

11          **4.   Possibility of Dispute Concerning Material Facts**

12      The fifth <u>Eitel</u> factor considers the possibility of dispute as

13 to any material facts in the case.  Here, Ploom filed a well-

14 pleaded complaint alleging the facts necessary to establish its

15 claims and provided evidence in the form of declarations and

16 attached exhibits.  Defendants have not responded to any of the

17 proceedings in this case, and thus no dispute has been raised

18 regarding the material averments of the Complaint.  The likelihood

19 that any genuine dispute may exist is, at best, remote.  This

20 factor therefore favors the entry of default.

21          **5.   Whether Default Was Due to Excusable Neglect**

22      Defendants have had nearly five months to respond to the

23 Complaint and have not done so.  There is no evidence in the record

24 that Defendants' failure to appear and otherwise defend was the

25 result of excusable neglect.  Defendants' failure to appear after

26 being served with the Complaint indicates that their failure to

27 appear was willful.

28 //

**United States District Court**
For the Northern District of California

**6.   Strong Policy Favoring Decision on the Merits**

Finally, the mere existence of Federal Rule of Civil Procedure 55(b) indicates that the seventh Eitel factor is not alone dispositive.  Pepsico, 238 F. Supp. 2d at 1177.  Moreover, Defendants' failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Therefore, the seventh Eitel factor does not preclude the Court from entering default judgment against Defendants.

**C.   Remedies**

**1.  Statutory Damages for Trademark Infringement**

The remedies available to a plaintiff who prevails on a claim for trademark infringement and counterfeiting under 15 U.S.C. § 1114 are listed under 15 U.S.C. § 1117(a)-(c).  Under § 1117(a), a registered mark holder may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action, subject to the principles of equity.  Section 1117(b) requires the court to treble the damages assessed under subsection (a) if the defendant "intentionally us[es] a mark or designation, knowing such mark . . . is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services."  Section 1117(c) permits a plaintiff to elect statutory damages, instead of actual damages and profits, in cases involving the use of a counterfeit mark in connection with the sale of goods. Plaintiffs who elect statutory damages may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  Additionally, in cases where the defendant's conduct is willful, a court may enhance the

**United States District Court**
For the Northern District of California

statutory damages award to an amount "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  If a plaintiff elects to recover statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded.  <u>Chanel, Inc. v. Lin</u>, No. C-09-04996, 2010 U.S. Dist. LEXIS 61295, at *39 (N.D. Cal. May 7, 2010) (citing <u>Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham</u>, 259 F.3d 1186, 1194 (9th Cir. 2001)).

     In the instant case, where Ploom has established that Defendants' conduct was willful, Ploom may recover statutory damages pursuant to § 1117(c) in an amount not less than $1,000 and not more than $2,000,000 per counterfeit mark per type of goods sold or offered for sale, as the Court considers just.  Ploom alleges that Defendants offered for sale two types of goods -- the iPloom Pax (which included counterfeit Ploom and Pax marks) and the Pax by Ploom (which included two distinct counterfeit Ploom Marks and counterfeit Pax marks).  However, the Court is not satisfied that the iPloom Pax and the Pax by Ploom are different types of goods.  "Common sense cuts in favor of defining the phrase 'type of goods' to be the general product type as opposed to many sub-forms of that product."  <u>Union of Orthodox Jewish Congregations v. Am. Food & Beverage Inc.</u>, 704 F. Supp. 2d 288, 292 (S.D.N.Y. 2010).  Because both the iPloom Pax and the Pax by Ploom were vaporizers that were substantially similar to one another, the Court finds that Defendants used counterfeit marks on only one type of good.  Nonetheless, Ploom has properly alleged infringement of three distinct marks used on one type of good: the Ploom trademark, the

stylized Ploom trademark, and the Pax Marks.  Ploom may recover for each of the three counterfeit marks.  Under § 1117(c), therefore, the Court finds that Ploom may recover not less than $3,000 and not more than $6,000,000.

Section 1117(c) does not give any specific guidance as to how a court should determine an appropriate statutory damages award. "Although the statutory damages need not reflect the defendants' unlawfully obtained profits, some district courts use § 1117(b) as a guide for setting damages under § 1117(c). In doing so, courts both counteract the profitability of counterfeiting and execute the punitive purposes of the statute." Chanel, Inc. v. Doan, No. C-05-03464 VRW, 2007 U.S. Dist. LEXIS 22691, *13 (N.D. Cal. Mar. 13, 2007) (calculating statutory damages by estimating defendant's profits and trebling for willfulness).  In other words, because statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages "bear some relation to the actual damages suffered." Coach, Inc. v. Ocean Point Gifts, No. C-09-4215 JBS, 2010 U.S. Dist. LEXIS 59003, *15 (D. N.J. June 14, 2010) (internal citations omitted).

When determining the appropriate amount of statutory damages to award under § 1117(c), some courts have considered the following factors that guide the award of statutory damages under an analogous provision of the Copyright Act: (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the

value of the infringing material produced; and (7) the potential
for discouraging the defendant.  See, e.g., Tshimanga, 2008 U.S.
Dist. LEXIS 118783 at *34; Microsoft Corp. v. Nop, 549 F. Supp. 2d
1233, 1237-38 (E.D. Cal. 2008).

Here, Ploom requests $100,000 in statutory damages per
counterfeit mark, for a total of $500,000.  ECF No. 21-1 ("Proposed
Order") at 4.  Ploom provides no basis for this figure.  However,
the Court will consider both the willful nature of Defendants' acts
and the scale of Defendants' operations.  See Philip Morris U.S.A.,
Inc. v. Castworld Prods., 219 F.R.D. 494, 500-01 (C.D. Cal. 2003)
(awarding $2,000,000 in statutory damages against defendant in
light of the defendant's "importation of large, commercial
quantities" of counterfeit cigarettes "having a street value of
millions of dollars").  The Court proceeds to consider the seven
factors commonly considered in copyright law.

### a. Expenses Saved and Profits Reaped

The lack of discovery in this case leaves no data as to
Defendants' expenses saved and profits reaped.  Ploom's
investigators purchased products from Ploom at prices of $79.95
(the iPloom Pax) and $199.95 (the Pax by Ploom).  There is,
however, no way for the Court to determine how many infringing
items Defendants sold.  The only evidence of the scale of the
operation is Mr. Marino's statement to Ploom's investigator that he
was expecting an order of 10,000 units of the Pax II.  Assuming
that Defendants did receive such an order and managed to sell all
such units at the $199.95 price, Defendants reaped revenues of
$1,999,500.  However, the fact that Defendants were unable to
deliver the investigator's order of the Pax by Ploom indicates that

**United States District Court**
For the Northern District of California

Defendants did not have such large inventories.  Given the lack of
evidence on this point, the Court cannot make a determination as to
whether the requested damages of $100,000 per infringement are
proportionate to Ploom's actual damages.

### b.  Revenues Lost

Ploom has provided no evidence of its revenues lost, either as
a result of Defendants' infringing activities or as a result of
counterfeiting in general.  Ploom alleges that Defendants have
unlawfully obtained the benefits of Ploom's brand and reputation
and caused confusion among potential customers by using Ploom's
marks and trade dress.  Compl. ¶ 52.  Nonetheless, absent some
evidentiary showing, the Court cannot reach any conclusion about
the magnitude of lost revenues to Ploom.

### c.  Value of the Intellectual Property

The Ploom Marks, Pax Marks, and X Design trade dress are
valuable because they are affiliated with a unique and recognizable
brand that has garnered considerable media attention.  Compl. ¶¶
26-30.

### d.  Willfulness of Defendants' Conduct

Defendants' conduct was undoubtedly willful, as they admitted
knowledge of Ploom's brand, continued their infringing conduct
after the commencement of this lawsuit, and repeatedly evaded
Ploom's efforts to shut down their websites.

### e.  Defendants' Lack of Cooperation in Providing Records

Defendants have not provided any discovery or participated in
this litigation in any way.

//

### f.  Deterrent Effect on Defendants

Defendants have created multiple websites to sell products that infringe upon Ploom's trademarks.  Ploom's efforts to shut down those websites have clearly not been an effective deterrent. Defendants' persistence suggests that a modest damages award will not deter them.

### g.  Deterrent Effect on Others

A significant award against Defendants would clearly have some kind of deterrent effect on other would-be infringers, although the magnitude of this effect is difficult to determine.

Taking into account all of the above, the Court finds the requested $100,000 per infringement to be an appropriate award. This amount is well within the guidelines established by Congress, takes into account the willfulness shown by continuing to sell counterfeit merchandise after multiple efforts to shut down its website and the culpability of failing to respond, and is significant enough to serve as compensation to Ploom and a deterrent to both the Defendants and others.

### 2.  Statutory Damages for Cybersquatting

A party that prevails on a claim of cybersquatting may elect to recover "instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).  Ploom requests the maximum statutory damages of $100,000.  Proposed Order at 4.

In determining appropriate statutory damages for cybersquatting,

//

**United States District Court**
For the Northern District of California

1

> courts generally consider a number of
> factors . . . including the egregiousness or
> willfulness of the defendant's cybersquatting,
> the defendant's use of false contact
> information to conceal its infringing
> activities, the defendant's status as a
> "serial" cybersquatter -- i.e., one who has
> engaged in a pattern of registering and using a
> multitude of domain names that infringe the
> rights of other parties -- and other behavior
> by the defendant evidencing an attitude of
> contempt towards the court or the proceedings.

Verizon Cal. Inc. v. Onlinenic, Inc., C 08-2832 JF (RS), 2009 WL
2706393 (N.D. Cal. Aug. 25, 2009).  In this case, Defendants'
cybersquatting was both willful and egregious.  Defendants
registered their domains with the intent to sell counterfeit Ploom
products and repeatedly registered new domains as Ploom discovered
them.  Defendants have also shown contempt towards these
proceedings by consistently failing to respond to summons.
However, there is no evidence in the record that Defendants ever
used false contact information or of serial cybersquatting (which
requires evidence of domain names that infringe on the rights of
other parties).

    Courts in similar cases have awarded a range of damages.[1]
Defendants' conduct in this case was willful and in bad faith, and
they have shown contempt for this Court and these proceedings.  The

---

[1] See, e.g., Partners for Health & Home, L.P. v. Yang, 488 B.R. 109
(C.D. Cal. 2012) (awarding $25,000 for domain through which
defendant had sold products willfully infringing on plaintiff's
trademarks); Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d
1072, 1085-87 (C.D. Cal. 2012) (awarding $50,000 where defendant
had provided false contact information to the domain registrar but
no other factors were present); Verizon Cal. Inc. v. Onlinenic,
Inc., C 08-2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009)
(awarding $50,000 per violation where all four factors were
present); Citigroup, Inc. v. Shui, 611 F. Supp. 2d 507, 513 (E.D.
Va. 2009) (awarding $100,000 where defendant's use of the domain
was "sufficiently willful, deliberate, and performed in bad
faith").

**United States District Court**
For the Northern District of California

1   Court finds that $50,000 in statutory damages appropriately

2   reflects the gravity of Defendants' violation of the law.

3                   **3.  Injunctive Relief**

4       In addition to damages, Ploom requests a permanent injunction

5   enjoining Defendants from using in commerce: (1) Ploom trademarks

6   and trade dress or similar marks; (2) the iPloom mark; (3) trade

7   dress confusingly similar to Ploom's PAX trade dress; and (4) the

8   iploom.com domain name.  The Lanham Act gives the court "power to

9   grant injunctions according to the rules of equity and upon such

10  terms as the court may deem reasonable, to prevent the violation"

11  of a trademark holder's rights.  15 U.S.C. § 1116(a).  Permanent

12  injunctions are routinely granted in cases like the instant one

13  where a defendant has not appeared in the action at all.  See,

14  e.g., Philip Morris, 219 F.R.D. at 502; Pepsico, 238 F. Supp. 2d at

15  1178; Coach Servs. v. Cheap Sunglasses, No. 09CV1059 BEN (JMA),

16  2010 U.S. Dist. LEXIS 68200, at *6-*8 (S.D. Cal. July 2, 2010).

17  Accordingly, a permanent injunction shall be entered with the

18  judgment.

19      Ploom also requests the transfer of the iploom.com domain name

20  to it.  The Lanham Act gives the Court the power to "order the

21  forfeiture or cancellation of the domain name or the transfer of

22  the domain name to the owner of the mark."  15 U.S.C.

23  § 1125(d)(1)(C).  The court finds such relief appropriate given the

24  intentional misuse of the domain at Ploom's expense.

25                  **4.  Costs**

26      Ploom also requests costs and attorney's fees under 15 U.S.C.

27  § 1117(a), which authorizes recovery of the costs of an action for

28  the violation of any right of the registrant of a trademark.  That

section also authorizes the court to award attorney's fees to a plaintiff in "exceptional cases."  Id. § 1117(a).  "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully."  K & N Eng'g, Inc. v. Bulat, 510 F.3d 1079, 1081-82 (9th Cir. 2007) (quoting Watec Co. v. Liu, 403 F.3d 645, 656 (9th Cir. 2005)).  The Court has found that Defendants acted willfully in this case, and so this is an exceptional case for the purposes of § 1117(a).

However, it is still not immediately obvious that Ploom may recover its attorney's fees.  Whether a plaintiff who elects statutory damages under § 1117(c) may also recover costs under § 1117(a) is an open question in this Circuit: "we do not reach the issue whether an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final sentence of § 1117(a)."  K & N Eng'g, 510 F.3d at 1082 n.5 (9th Cir. 2007).  The Second Circuit, though, has resolved this issue, holding that "an award of attorney's fees is available under section 1117(a) in 'exceptional' cases even for those plaintiffs who opt to receive statutory damages under section 1117(c)."  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012).  The Court finds the Second Circuit's reasoning persuasive.

Ploom is entitled to the costs of this action.  See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993).  Ploom is also entitled to attorney's fees in addition to its statutory damages.  Ploom may submit its Bill of Costs in accordance with Civil Local Rule 54-1.

**United States District Court**
For the Northern District of California

**V.**     **CONCLUSION**

The Court GRANTS the Motion for Default Judgment filed by Ploom against Defendants iPloom, LLC and Anthony Marino. Defendants are jointly and severally liable for $350,000 to Ploom, plus Ploom's costs.  Plaintiffs shall submit their Bill of Costs within fourteen (14) days of this Order as provided by Civil Local Rule 54-1.  Failure to do so will result in a waiver of costs.  An injunction shall issue with the judgment.  Plaintiffs have the responsibility to serve the injunction in such a manner to make it operative in contempt proceedings.

IT IS SO ORDERED.

Dated: May 12, 2014

_____
UNITED STATES DISTRICT JUDGE